**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 23, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WILLIAM SHERMAN RAY,

    Defendant - Appellant.

No. 02-5213
(D. Ct. No. 00-CR-126-C)
(D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, **EBEL,** and **HARTZ**, Circuit Judges.

---

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant William Sherman Ray was convicted of conspiring to possess with intent to distribute controlled substances in violation of 18 U.S.C. § 846, conspiring to launder money in violation of 18 U.S.C. § 1956(h), and possession with intent to

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

distribute more than fifty kilograms of a substance containing marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). After making numerous findings of fact, the District Court sentenced him to concurrent sentences of 240 months' imprisonment for the money laundering conspiracy charge and 280 months' imprisonment for the drug conspiracy and possession charges. We affirmed Mr. Ray's conviction and sentence. *See United States v. Ray*, 370 F.3d 1039 (10th Cir. 2004) ("*Ray I*"). Subsequently, the Supreme Court summarily reversed and remanded our decision in light of *United States v. Booker*, 543 U.S. —, 125 S. Ct. 738 (2005). *See Ray v. United States*, — U.S. —, 125 S. Ct. 995 (Jan. 24, 2005). We then ordered the parties to file supplemental briefs on the issue, and upon reconsideration, we AFFIRM Mr. Ray's sentence and REINSTATE all non-sentencing portions of our previous opinion.

## I. DISCUSSION

### A.

In *Booker*, the Court "reaffirm[ed its] holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756. "As a result, the Court held that mandatory application of the Guidelines violates the Sixth Amendment when judge-found facts, other than those of prior convictions, are employed to enhance a sentence." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731

(10th Cir. 2005) (en banc). To remedy this error, the Court "severed two provisions of the Sentencing Reform Act of 1984, . . . [n]amely, . . . 18 U.S.C. § 3553(b)(1), which made the imposition of a Guidelines sentence mandatory in the vast majority of cases, and those portions of 18 U.S.C. § 3742(e) that established standards of review on appeal." *Id*. "Henceforth, courts are still required to consider the Guidelines in determining sentences, but they are not required to impose a sentence within the Guidelines range." *Id*.

We recognize two types of *Booker*-related error. "First, a court could err by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." *Id*. We refer to this type of error, which violates the Sixth Amendment as described in *Booker*, as "constitutional *Booker* error." *Id*. "Second, a sentencing court could err by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction." *Id*. at 731–32. We refer to this type of error as "non-constitutional *Booker* error." *Id*. at 732.

In the present case, the jury found that the amount of cocaine involved in the conspiracy was five kilograms or more, and the amount of marijuana involved in the conspiracy was 1,000 kilograms or more. The District Court grouped the charges of conspiring to possess with intent to distribute and possession with intent to distribute, and considered them as a single unit according to U.S. Sentencing Guidelines Manual

- 3 -

§ 3D1.2(d) ("U.S.S.G.").  Based on these findings and his criminal history category of III, Mr. Ray's offense level would have been a 32, *see* U.S.S.G. § 2D1.1(c), and he would have been subject to a sentencing range of 151–188 months, *see* U.S.S.G. Ch. 5, Pt. A. Subsequently, however, the District Court applied a two-level enhancement based on its determination that Mr. Ray possessed a dangerous weapon, *see* U.S.S.G. § 2D1.1(b)(1), and a three-level enhancement based on its determination that Mr. Ray played a supervisory role in the crime, *see* U.S.S.G. § 3B1.1(b).  With these enhancements, his offense level was calculated at 37 and the Guidelines produced a sentencing range of 262–327 months.  *See* U.S.S.G. Ch. 5 Pt. A.  The District Court sentenced him to 280 months.  Because judge-found facts regarding the dangerous weapon and supervisory role were used to increase Mr. Ray's sentence mandatorily, we face constitutional *Booker* error.

**B.**

Before we determine whether Mr. Ray is entitled to resentencing, we must first address whether the *Booker* error issue was preserved below.  *Compare* Fed. R. Crim. P. 52(a) *with* Fed. R. Crim. P. 52(b) (mandating review for harmless error where the issue was preserved below and review for plain error where it was not).  Mr. Ray contends that his original factual objections to the enhancements, as well as his objection that the enhancements denied his right to due process, preserved the *Booker* error issue below. First, we note that Mr. Ray's due process objection does not address Sixth Amendment

rights and therefore does not preserve the *Booker* error issue.[1]  Second, we have previously held that contesting the evidentiary bases for judge-found facts is not sufficient to preserve error under *Booker*.  *United States v. Dazey*, 403 F.3d 1147, 1173–74 (10th Cir. 2005).  We therefore review for plain error.  *Id.* at 1174.

## C.

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Gonzalez-Huerta*, 403 F.3d at 732 (quotations omitted).  Because we face constitutional *Booker* error here, we apply this test less rigidly than in the non-constitutional context.  *Dazey*, 403 F.3d at 1174.  In light of *Booker*, it is clear that Mr. Ray's sentence was erroneously imposed and plainly so.  *See id.* at 1174–75.  Nonetheless, we cannot remand for resentencing unless Mr. Ray meets his burden to satisfy both the third and fourth prongs of plain-error review as well.  *Id.* at 1174–75, 1178.

Under the third prong, "[f]or an error to have affected substantial rights, the error must have been prejudicial: It must have affected the outcome of the district court proceedings."  *Id.* at 1175 (quotations omitted).  On remand, Mr. Ray asserts that he satisfies the third prong of plain-error review but provides no evidence to support his assertion.  In Mr. Ray's discussion of substantial rights, he presents a lengthy discussion

---

[1] We address the substance of Mr. Ray's due process challenge below.

of *Booker*, including its prohibition of mandatorily applied Guidelines enhancements, and appears to argue that prejudice exists simply because "[t]he District Court relied heavily on the drug quantities and enhancements in sentencing Mr. Ray." We have previously rejected the argument that "the mere difference between the imposed Guidelines sentence and the sentence the defendant would have received based on the facts found by the jury . . . is sufficient to satisfy the third prong of plain error." *Id*. at 1175–76. Moreover, Mr. Ray's conclusory assertion that "[t]he error was prejudicial and affected the outcome of the trial" similarly does not satisfy the third prong of plain-error review. Mr. Ray has thus failed to meet his burden to establish that the error here affected his substantial rights.

Even after our independent examination of the record, we have found no evidence that indicates the error affected Mr. Ray's substantial rights. As we outlined recently in *Dazey*, there are at least two ways to show that one's substantial rights are affected in a constitutional *Booker* error case. *Id.* at 1175. "First, if the defendant shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence, then the defendant successfully demonstrates that the error below affected his substantial rights." *Id*. To conduct this inquiry, the court of appeals reviews the evidence submitted at the sentencing hearing and the bases for the defendant's objections to the facts on which the sentence was predicated. *Id*. In *Dazey*, the defendant met this standard by "strenuously contest[ing] the factual basis for the sentencing enhancements [by] presenting

[countervailing] evidence" that allowed us to "conclude [that] there is a reasonable probability that a jury evaluating the evidence presented at trial would not determine, beyond a reasonable doubt," that the factual predicate for the sentencing enhancements were proven. *Id.* at 1177.

In the present case, Mr. Ray did not present such countervailing evidence. At the sentencing hearing, Mr. Ray challenged the evidentiary basis for the enhancement for possession of a firearm, claiming that it was "clearly improbable" that the possession was connected to the drug offenses. *See* U.S.S.G., § 2D1.1 cmt. n.3 ("The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."). An officer from the Tulsa Police Department subsequently testified that, during the execution of a warrant, officers from the department found a handgun and two small rocks of crack cocaine, one of which tested positive as cocaine. The police officer also testified that the police department had records of conversations indicating that Mr. Ray was a member of the conspiracy at the time the gun was seized, including records of wire transfers between Mr. Ray and other members of the conspiracy. Mr. Ray did not present countervailing factual evidence. Mr. Ray's challenges consisted of an alternate explanation that the District Court dismissed out of hand: "[W]hen [Mr. Ray] says he has [the gun] for his personal protection, that was probably exactly correct. That's what most drug dealers have, because they want to protect both themselves and their product, all of which they consider to be personal

protection." The District Court held that the possession of the gun was satisfactorily linked with Mr. Ray's activities as part of the conspiracy. Mr. Ray's personal defense theory and his contention that the government presented "no evidence" in support of the enhancement, by no means constitute meaningful countervailing evidence as contemplated by *Dazey*. Accordingly, we hold that Mr. Ray has failed to show that there was a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts.

There is a similar absence of convincing countervailing evidence for the enhancement for Mr. Ray's supervisory role in the conspiracy. At the sentencing hearing, the government reminded the court of testimony from two witnesses who transported controlled substances for Mr. Ray, as well as testimony that Mr. Ray had accompanied the head of the conspiracy in the trail car during the transportation of marijuana. Mr. Ray contended that the government had presented "no evidence at trial that Mr. Ray recruited the drug couriers" and that there was also not sufficient evidence to prove that he had decision-making authority or that he was a manager or an organizer in the conspiracy. Mr. Ray's unsubstantiated assertions, however, fall far short of showing that a jury would not have found the same facts beyond a reasonable doubt.

The second way "a defendant may show that the district court's error affected his substantial rights [is] by demonstrating a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a), the

district court judge would reasonably impose a sentence outside the Guidelines range." *Dazey*, 403 F.3d at 1175 (note omitted). This may be demonstrated when the district court states that the defendant's conduct, based on this particular record, did not warrant the minimum Guidelines sentence. *Id*. In this case, the District Court did not make any such statement. Moreover, the District Court declined to sentence Mr. Ray to the minimum possible sentence within the Guidelines range, instead sentencing him to 280 months' imprisonment. Finally, Mr. Ray does not argue that any of the § 3553(a) factors could be used, given the facts of this case, to impose a lesser sentence.

Thus, we conclude that Mr. Ray has not shown that his substantial rights were affected. Because Mr. Ray fails the third prong of the plain-error review, we hold that the *Booker* error in the present case does not merit remand for resentencing.

**E.**

Finally, having addressed Mr. Ray's *Booker* challenges, we now address the ex post facto and due process arguments he raises on remand. Mr. Ray argues that his sentence—which, as just explained, is greater than what could have been imposed based solely on facts found by a jury beyond a reasonable doubt or admitted by him—violates the ex post facto clause and the due process clause. He argues that although *Booker* now permits such a sentence due to its holding that the Guidelines are discretionary, his crimes were committed prior to *Booker* and therefore using *Booker* to justify his heightened sentence constitutes an impermissible retroactive application of judicial decisionmaking

contrary to both the ex post facto and due process clauses.

This, however, is not the situation we face here. Contrary to Mr. Ray's assertion, this Court is in no way applying *Booker* to justify a sentence that *Booker* itself clearly holds is unconstitutional—that is, a sentence imposed under a mandatory Guidelines scheme that is greater than what could have been imposed based solely on facts found by a jury beyond a reasonable doubt or admitted by him. We have simply concluded that because Mr. Ray fails to meet the third prong of plain-error review, we will not remedy the error in this case. Mr. Ray's due process and ex post facto arguments have no application here.

### III. CONCLUSION

On remand from the Supreme Court in light of *Booker*, we do not revisit our previous opinion affirming Mr. Ray's conviction. Further, on plain-error review, we cannot reverse Mr. Ray's 280-month sentence. Therefore, we REINSTATE all non-sentencing portions of our previous opinion, as well as our previous discussion of the imposition of fines, and upon reconsideration in light of *Booker* AFFIRM Mr. Ray's sentence.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge


- 10 -